The J.J.A. Corporation v. Commissioner.
J.J.A. Corp. v. Commissioner
Docket No. 110796.
United States Tax Court
1943 Tax Ct. Memo LEXIS 455; 1 T.C.M. (CCH) 583; T.C.M. (RIA) 43086; February 11, 1943
*455 In 1932 petitioner was organized under the laws of Delaware for the purpose of acquiring and holding a debtor's interest under his father's will. Certain of his creditors assigned their debts to the corporation which in turn cancelled the debt in exchange for a deed to the debtor's interest. The creditors received stock for their assignment. By corporate charter petitioner had broad powers to carry on business. Franchise and other taxes were paid to the States of Delaware and Pennsylvania. Federal income tax returns were filed for the years 1932-1939. Petitioner's income was distributed to the officers as "salaries" and not to all stockholders pro rata. Held, under the facts, petitioner's corporate entity will not be disregarded for income tax purposes. Leon Meltzer, Esq., 1528 Land Title Bldg., Philadelphia, Pa., for the petitioner. Myron S. Winer, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: The Commissioner determined deficiencies of $148.31 and $152.06 for the taxable years 1938 and 1939, respectively, under section 14 (c) of the Revenue Act of 1939 and the Internal Revenue Code. [1] Petitioner does not question any of the adjustments made *456 by respondent but simply contends that it is a "mere Conduit" and not a corporation having a separate entity. Findings of Fact Petitioner filed its income tax returns for the years 1938 and 1939 with the collector of internal revenue for the first district of Pennsylvania. In years prior to 1932 certain relatives of Solomon Fridenberg had advanced money in trust to him. He had executed trust and participating certificates and covenants to these *457 relatives. Under such certificates, he had agreed to repay all of the principal and interest. He owed his wife $17,200, his sister $10,500, and a cousin $10,000 under such certificates. He was also indebted to a bank in the amount of approximately $8,600. This bank indebtedness was secured by two insurance policies upon the life of Fridenberg and also by a second mortgage upon certain Walnut Street property. Fridenberg also owed $2,000 to another cousin. For services to Fridenberg and to the corporation there was a debt of $100 owed to an attorney for professional services. Fridenberg's only tangible asset was an interest in certain real property in Philadelphia, Pennsylvania, hereinafter referred to as the Chestnut Street property, in which he had a one-third life interest under the will of his father. In order to secure the amounts owed to his relatives, Fridenberg decided to organize the petitioner corporation. He transferred to the corporation his interest "as it might appear" under the will of his father in the Chestnut Street property. The creditors transferred their indebtedness to the corporation, which in turn cancelled it in return for a deed from Fridenberg and his wife *458 of his interest in the Chestnut Street property. His relatives then received stock in petitioner corporation equal to their claims against Fridenberg. Ten shares were issued to Fridenberg as trustee for a cemetery fund, the purpose of which was to provide care for the graves of his father and others. One share was also issued to the attorney in payment for services to Fridenberg and to the corporation. The authorized capital stock of petitioner was $100,000, but the by-laws provided that only $40,800 worth should be issued except upon the approval of two-thirds in interest of the stockholders. This latter reservation was made so that in the event the bank should wish to give up its security and take stock at the par value of the amount of its debt, it could become a stockholder. The bank, although offered an opportunity to do so, refused. Fridenberg, as the trustee under the will of his father, managed the Chestnut Street property, collected the rents and paid the expenses. Fridenberg was never paid anything by the corporation. The amount due under the assignment was turned over to his wife, who was treasurer of petitioner corporation. His wife deposited the money in her own bank *459 account and paid it out as salaries to various officers of petitioner. Such payees were also stockholders of petitioner but the payments were not made to them as stockholders nor in proportion to their stock holdings. The officers receiving such payments constituted about one-half of the number of stockholders. In the income tax returns filed by petitioner such payments were denominated salaries and deducted from the gross income. Petitioner never had an office although its business address was given on the income tax returns as the Chestnut Street address of the property in which it had acquired Fridenberg's interest. The petitioner kept no records as to receipts and disbursements except as the treasurer did so on the leaves of her own personal account book. There were only two meetings of the board of directors, one upon the formation of the corporation and the other after the death of one of the stockholders. The officers did not perform any services for the petitioner. The salaries were paid to the officers simply because they were officers. In none of the years did petitioner pay a Federal income tax although it filed a return in each year of its existence. On each of those *460 returns it stated in effect that it was not engaged in business. No activities, other than the holding of the interest in the Chestnut Street property, were carried on by the corporation although it had broad powers conferred by its charter. In each year the petitioner corporation paid taxes to the State of Delaware, the state of its incorporation, and to the State of Pennsylvania. Opinion The sole issue of this proceeding is whether or not the corporate entity of petitioner should be disregarded for income tax purposes. Petitioner contends in its reply brief as follows: It is herein submitted that The J.J.A. Corporation was a voiceless instrumentality, a mere shell and that its corporate identity should be disregarded for Income Tax purposes. Respondent, on the other hand, contends that since the corporation chose to pay "salaries" and state taxes and since the stockholders did not choose to disregard the corporate entity, the entity should be recognized for income tax purposes. Petitioner is a corporation asking that its corporate entity be disregarded for tax purposes. At first blush this would appear an anomaly. However, under certain circumstances, corporate entity has at *461 times been so disregarded at the behest of the corporation. ; . But compare, , reversing . Only in exceptional circumstances will the corporate entity be disregarded, where it has complied with the laws of the state giving it the right to transact business under its charger. . See . "Each case on the question rests peculiarly upon its own facts." . Applying such general rules to the facts of the instant case, we held that the corporate entity should not be disregarded. The petitioner had broad powers conferred upon it by its charter. It paid taxes to the state of its incorporation and also to the State of Pennsylvania where its property was held. It was, in fact, a de jure corporation *462 with broad powers conferred upon it by its charter. It is contended that petitioner was organized for the limited purpose of protecting certain of Fridenberg's creditors. This purpose was accomplished but it is a function continuing until at least there is a distribution under the will of Fridenberg's father. Such distribution is not to take place until all three of the named life beneficiaries have died. For the accomplishment of this continuing purpose, the petitioner corporation was kept alive by the payment of franchise and other taxes to the State of Delaware and Pennsylvania. This alone militates against disregarding the corporate entity. See Throughout the years the corporation filed income tax returns on which it took deductions for salaries, taxes, and even for contributions to a cemetery fund in one of its returns. Each of the returns included a statement to the effect that the corporation was not engaged in business. However, we are unable to say from the record that the stockholders disregarded the corporate entity. According to the 1932 return, officers' salaries were paid to three out of six stockholders. Those *463 payments were not proportionately divided according to their interests as stockholders. The other three stockholders received no distribution as salaries or otherwise. Thus, only three out of six stockholders received funds which had to be included as a part of their gross income in their Federal income tax returns. If the entity had been disregarded, all of the stockholders would have had to report their pro rata share. A similar situation is apparent in every one of the returns placed in evidence. Thus, for income tax purposes, the stockholders themselves did not disregard the corporate entity. See , affirmed on another point . In such a situation, we held that the corporate entity will be recognized. The cases in which a corporation was organized simply to hold the pass title are not in point because here the stockholders did not disregard the corporate entity themselves and the life of petitioner was not to be momentary. See ; , *464 , affirmed ; . As suggested by respondent, the three stockholders who received distributions denominated "salaries" may well have had the benefit of an earned income credit in respect thereof in the computation of their individual income taxes. They would not have been entitled to such credit had the corporate entity been disregarded by them. We think it clear from the facts here that the stockholders did not disregard the corporate entity of petitioner and that it was utilized for a purpose beyond that of a mere conduit. We hold that the corporate entity of petitioner should not be disregarded for tax purposes and since no other issue was raised, we must sustain the action of the respondent. Decision will be entered for respondent. Footnotes
1. SEC. 14. TAX ON SPECIAL CLASSES OF CORPORATIONS. * * * * *
(c) Corporations with Net Incomes of Not More Than $25,000. - If the net income of the corporation is not more than $25,000, and if the corporation does not come within one of the classes specified in subsection (d), (e), (f), or (g) of this section, the tax shall be as follows: Upon special class net income not in excess of $5,000, 12 1/2 per centum. $625 upon special class net income of $5,000, and upon special class net incomes in excess of $5,000 and not in excess of $20,000, 14 per centum in addition of such excess. $2,725 upon special class net income of $20,000, and upon special class net incomes in excess of $20,000, 16 per centum in addition of such excess.↩